FARJEON v. INDIAN TERRITORY ILLUMINATING OIL CO. et al.

(Supreme Court, Special Term, New York County. December 31, 1909.)

1. CORPORATIONS (§ 432*)—CONTRACTS BY CONTROLLING STOCKHOLDERS—AUTHORITY AND RATIFICATION—BURDEN OF PROOF.

Where two persons, owning the majority of the stock and in absolute control of two corporations, contract in their behalf, and the corporations share in the benefits, supposed or real, the burden is on such corporations to show, in an action on the contract, that it was neither authorized nor ratified.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1730; Dec. Dig. § 432.*]

2. CORPORATIONS (§ 298*)—MINUTES OF PROCEEDINGS—EFFECT AS TO CONTRACTS AND PERSONS CONTRACTING WITH CORPORATION.

Minutes of proceedings of the directors of a corporation are not binding on one seeking to enforce against it a contract claimed to have been made

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in its behalf, not shown thereon, and a corporation could not vitiate a contract by failing to have it noted in its minutes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 160, 1315, 1316; Dec. Dig. § 298.*]

3. BROKERS (§ 60*)—PROCURING PARTIES TO MAKE CONTRACT—RIGHT TO COMMISSIONS.

Right to recover commissions for procuring parties to make a contract is earned when it is executed, and is not affected by trouble between them arising thereafter.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

4. CONTRACTS (§ 94*)—EXECUTORY CONTRACT—EFFECT OF MISREPRESENTATION.

Misrepresentations, producing natural misconception as to the importance of a promise in reliance thereon, relieve the promisor under an executory contract, though innocent, and not constituting intentional fraud.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 422; Dec. Dig. § 94.*]

5. ASSIGNMENTS (§ 64*)—EFFECT OF INDUCING BY FALSE REPRESENTATIONS.

Assignments of commissions to be earned for procuring a contract to be made, induced by false representations that the assignments were necessary to facilitate the contract, are not binding.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 125; Dec. Dig. § 64.*]

Action by Albert Farjeon against the Indian Territory Illuminating Oil Company and others. Findings and judgment for plaintiff, to be settled on notice.

Maloney & Harding, for plaintiff.

Van Iderstine, Badger & Barker, for defendants.

DAYTON, J. The majority stock and management of the Phœnix and Osage Oil Companies were in the hands of Simmons and E. B. Foster (now dead) in an effort to develop leased oil properties. The companies had joint offices in this city. The large sums obtained from the Mechanics' Saving Bank, in Westerly, R. I., by Simmons and Foster, with a majority or voting pool of that stock as collateral, were borrowed for development purposes. Inferentially those moneys had been expended unavailingly. Another method for securing more money was needed, and so Simmons and E. F. Foster, acting in the names of the Phœnix and Osage Companies, made the agreement sued on with plaintiff, through whose efforts the Bates and McCarthy contract was entered into with those companies November 9, 1901. Bates and McCarthy were instrumental in organizing the defendant Illuminating Oil Company under arrangements acceptable to the Phœnix and Osage Companies. Difficulties, litigations, and consequent lapse of time happened; but finally the Mechanics' Saving Bank was paid, the Phœnix and Osage collateral stock was released, and the Osage Company received 2,000,000 and the Phœnix Company 1,000,000 shares of the capital stock of the Illuminating Oil Company. During this period plaintiff had talks with Simmons, Bates, McCarthy, Richmond, and Wheeler; the latter acting as attorney for the parties incorporating the Illuminating Oil Company in New Jersey. Mean-

while the term of the oil lease was expiring. This action was begun in January, 1905. Application for a renewal of the oil lease (expiring 1906) was made to the authorities at Washington. Plaintiff attended, and there met Senator Fancher, originally a stockholder in Phœnix and Osage Companies, who asked plaintiff to remain away from the investigation, stating that so soon as he (Fancher) returned to New York he would see that plaintiff's claim was settled. The lease of the oil lands was extended, and Senator Fancher testified that the Illuminating Oil Company stock was valuable.

It is urged that plaintiff may not recover on the ground that his contract was not made pursuant to any authority conferred upon Simmons and E. B. Foster by resolutions of the board of directors of the Phœnix and Osage Companies. The circumstance that the Phœnix and Osage Companies, with the approval of their stockholders, entered into the agreement with Bates and McCarthy, taken in connection with other testimony, tends strongly to ratify the acts of Simmons and E. B. Foster in binding these companies to the agreement with plaintiff. The document of June 5, 1901, signed by Mr. Simmons, president of the Phœnix Company, and approved by E. B. Foster for the Osage Company, provided that if, through the parties introduced by Mr. Farjeon, a financial negotiation or arrangement was secured whereby all the stock of the Osage Company and a controlling interest of the Phœnix Company was sold or sufficient capital for development was obtained, those companies would pay him 20 per cent. on any money, stock, bonds, or other securities as and when received; those companies to have the privilege of seeking elsewhere for a purchaser, in which event a notice thereof to Farjeon should act as a cancellation of "this authority." No such notice was given to Farjeon. Unquestionably the Bates and McCarthy contract of November 9, 1901, was the result of Farjeon's introduction. It is not contended that "this authority" was attempted to be, or was, canceled; but, on the contrary, it irrefragably appears that out of the Bates and McCarthy contract the Indian Territory Illuminating Oil Company was evolved, by and with approval of the stockholders of the Osage and Phœnix Companies, who shared in the benefits, supposed or real, in that reorganization of their extensive properties. On these indisputable facts the burden was on the defendants to show that Farjeon's contract was neither authorized nor ratified.

By the charters of the Osage and Phœnix Companies they were authorized to pay for promotion expenses and to remunerate any person for services in placing any shares or securities of the companies. Messrs. Simmons and E. B. Foster were manifestly in absolute control of the management of both companies and their conduct, though the Bates and McCarthy contract, brought about by Farjeon's introduction, enabled them to produce results satisfactory to the stockholders they represented. The theory that Farjeon's contract was a "secret agreement" is negatived by the testimony. Mr. Simmons' statement that the contract was a nullity is negatived by his own acts concerning it. Defendants sought to show that the minutes of the Osage and Phœnix Companies were silent as to this contract. They were not

binding on plaintiff; but, further, there is evidence that the contract was discussed at meetings of directors of one or both of said companies, whose offices were together and whose interests were substantially identical, Mr. Simmons being a stockholder in both. It is therefore unreasonable to suggest that this agreement was "secret." If Mr. Simmons made no reference to it when the Oklahoma parties invested, Mr. Farjeon could not be prejudiced by Mr. Simmons' reticence concerning an obligation of which Simmons was aware. Neither the Phœnix nor Osage Companies could vitiate that contract, which brought Bates and McCarthy into relations with them, by failing to have it noted on their minutes.

It is contended by defendants that Farjeon should not recover because of the troubles which arose after the Bates and McCarthy contract was executed. This is untenable. The Phœnix and Osage Companies chose to make that contract with the parties introduced by Farjeon. His function ended when the parties he brought together agreed upon terms satisfactory to both sides. His commission upon that transaction was then earned. It seems that on June 7, 1901, plaintiff transferred 50 per cent. of his commission in blank, at the suggestion of Mr. Simmons that such reduction was necessary to facilitate the Bates and McCarthy agreement. Again, and on November 6, 1901, plaintiff transferred 75 per cent. of his remaining 10 per cent. to a Mr. Page, an intimate of Simmons, upon similar statements by Simmons. No evidence was offered to show that any part of Farjeon's commission was so used. Mr. Simmons denied making such representation, and said that no arrangement was made to give to any one any part of Farjeon's commission, and, further, that he took an assignment from Page (now dead) on December 6, 1901, as security for Page's indebtedness to him. This does not coincide with Simmons' testimony that the contract of June 5, 1901, was a nullity. If he so believed, why did he seek part of it as security? His testimony being conflicting, recourse may be had to Farjeon's unimpeached evidence and to the probabilities. It must be assumed that Farjeon in good faith was desirous of earning his commission; that he was willing to share it with others, if by so doing the desired results could be accomplished. Simmons falsely represented the latter proposition on two occasions, in reliance upon which plaintiff made the transfers stated.

On the trial I intimated that the assignment of June 7, 1901, should stand, while that of November 6, 1901, was void. My impression then was that the reduction of 10 per cent. was beneficial to these companies, as others than Farjeon were to receive 10 per cent. of his commission in aiding to bring about the Bates and McCarthy contract. A review of the record demonstrates the falsity of Mr. Simmons' statement in this respect, on which plaintiff relied. "Such misrepresentations, even though innocent, producing natural misconception as to the importance of the promise, relieve the promisor under an executory contract, even though they do not constitute intentional fraud." Russel, J., Dayton v. Am. Steel Bridge Co., 76 App. Div. 462, 73 N. Y. Supp. 316, 79 N. Y. Supp. 1130. The transfer of November 6, 1901, was obtained by such palpable fraud that no additional comment is necessary. Furthermore, the testimony of Mr. Crafts, who participated in the reorganiza-

tion with these companies, was furnished, not by plaintiff, with a copy of plaintiff's June 5th contract; no mention being made of any modifications thereof. The proofs satisfy me that all the parties in interest were apprised of the Farjeon contract prior to and when the Illuminating Oil Company was organized.

Several days were consumed in this trial. The depositions alone cover about eight hundred printed pages. Elaborate briefs and replies have been submitted by both parties. The foregoing is, therefore, but an epitome of the record, upon which I reach the conclusion that plaintiff, having sustained the burden of proof, is entitled to judgment for 20 per cent. as set forth in his contract of June 5, 1901, and that the assignments of June 7 and November 6, 1901, are not binding upon him.

Settle findings and judgment on notice.